# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2655

_____

| | | |
|---|---|---|
| Yvonne Thomas, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| St. Louis Board of Police | * | District Court from the |
| Commissioners; Mary Nelson; | * | Eastern District of Missouri. |
| Michael J. Quinn; Susan Rollins; | * | |
| Bartholomew Saracino; | * | |
| Francis G. Slay, Mayor, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: February 13, 2006
Filed: May 18, 2006

_____

Before LOKEN, Chief Judge, BOWMAN and SMITH, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The issue presented in this case is whether the St. Louis Board of Police Commissioners (St. Louis Board) is an "arm of the state" of Missouri for purposes of Eleventh Amendment immunity. The District Court answered the question affirmatively and dismissed the case for lack of subject matter jurisdiction. While we might be inclined to agree with the District Court were we writing on a blank slate,

binding precedent directs that the St. Louis Board is not an arm of the state and thus not entitled to Eleventh Amendment immunity.  Accordingly, we reverse.

Yvonne Thomas brought this action against the St. Louis Board and each commissioner of the board in his or her official capacity for damages arising from the acts of police officers on the St. Louis Metropolitan Police force.  Thomas alleges that on the evening of June 9, 2002, two St. Louis police officers entered her back yard without her permission and performed a warrantless search.  After Thomas threatened to report the police officers' behavior to their supervisor, the police officers arrested Thomas and took her to the Metropolitan St. Louis Psychiatric Center.  Thomas was admitted to the center against her will.  She sued the St. Louis Board[1] under 42 U.S.C. § 1983 for "false arrest," "detention and confinement," and "neglecting to prevent," and under Missouri common law for "malicious abuse of process" and "intentional infliction of emotional distress."  Second Amended Complaint at 2–8.

On May 10, 2005, a magistrate judge[2] dismissed the case on the ground that the St. Louis Board was entitled to Eleventh Amendment immunity from suit in federal court.[3]  The magistrate judge premised his decision on the recent opinion of the Missouri Supreme Court in Smith v. State, 152 S.W.3d 275 (Mo. 2005) (en banc).  The court in Smith held that the St. Louis Board is an "agency of the state" for

---

[1]A complaint against a police commissioner in his or her official capacity is construed as a complaint against the St. Louis Board.  See Drake v. Koss, 439 F.3d 441, 445 n.2 (8th Cir. 2006) (construing a complaint against jailers in their official capacities as a complaint against jail).  For simplicity, we will refer only to the St. Louis Board in our discussion of the defendants.

[2]The case below proceeded before a magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) (2000).

[3]The magistrate judge had previously entered judgment for the St. Louis Board on Thomas's "false arrest" and "detention and confinement" claims.  Thomas does not appeal that decision.

purposes of coverage under the State Legal Expense Fund (SLEF), Mo. Rev. Stat. § 105.711. Smith, 152 S.W.3d at 278. As such, judgments obtained against the St. Louis Board would be paid from the state treasury. Id. at 277 (citing Mo. Rev. Stat. § 105.711). The magistrate judge determined that the Smith holding, when considered with state statutes that create the St. Louis Board (a type of body authorized in Missouri law only for St. Louis and Kansas City) and that impose numerous requirements upon it, "compels a conclusion that the [St. Louis] Board members are entitled to Eleventh Amendment immunity in the instant case." Memorandum and Order at 8 (May 10, 2005). Thomas appeals.

The sovereign immunity enjoyed by states and recognized in the Eleventh Amendment[4] bars private parties from bringing actions for damages against unconsenting states in federal courts. Becker v. Univ. of Neb., 191 F.3d 904, 908 (8th Cir. 1999); see also Quern v. Jordan, 440 U.S. 332, 345 (1979) (ruling that 42 U.S.C. § 1983 does not abrogate a state's Eleventh Amendment immunity). While Eleventh Amendment immunity "extends to states and 'arms' of the state," it does not extend to local governments. Gorman v. Easley, 257 F.3d 738, 743 (8th Cir. 2001), rev'd on other grounds sub nom. Barnes v. Gorman, 536 U.S. 181 (2002). "[T]he question whether a particular state agency . . . is . . . an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 n.5 (1997). In answering that federal question, however, courts must "consider[] the provisions of state law that define the agency's character." Id.; see also Gorman, 257 F.3d at 743. Specifically, courts assess the agency's degree of autonomy and control over its own affairs and, more importantly, whether a money judgment against the agency will be

_____

[4]"[T]he phrase 'Eleventh Amendment immunity' is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." N. Ins. Co. of N.Y. v. Chatham County, Ga., 126 S. Ct. 1689, 1693 (2006) (quotation marks and citation omitted).

paid with state funds.  See Regents, 519 U.S. at 430;  Hadley v. N. Ark. Cmty. Technical Coll., 76 F.3d 1437, 1439 (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997).

We review de novo the District Court's determination that the St. Louis Board is an arm of the state and is therefore immune from suit.  See Green Acres Enters., Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005).  Because the magistrate judge's decision is contrary to direct holdings of the United States Supreme Court and our Circuit, we must reverse.

The United States Supreme Court addressed the issue of the St. Louis Board's status for Eleventh Amendment purposes in Auer v. Robbins, 519 U.S. 452 (1997). In Auer, St. Louis police officers sued the St. Louis Board for overtime pay under the Fair Labor Standards Act of 1938.  The St. Louis Board argued, *inter alia*, that the district court lacked jurisdiction over the suit "by virtue of the Eleventh Amendment." Id. at 456 n.1.  The Supreme Court rejected the St. Louis Board's assertion of sovereign immunity, holding that the St. Louis Board is not an arm of the state:

> The Board of Police Commissioners . . . does not share the immunity of the State of Missouri.  While the Governor appoints four of the board's five members, Mo. Rev. Stat. § 84.030 (1994), the city of St. Louis is responsible for the board's financial liabilities, § 84.210, and the board is not subject to the State's direction or control in any other respect.  It is therefore not an "arm of the State" for Eleventh Amendment purposes.

Id.

Four years after Auer, our Circuit was called upon in Gorman to address the Eleventh Amendment status of the Kansas City Board of Police Commissioners (Kansas City Board) in an action brought by a wheelchair-bound arrestee for damages he sustained while he was being transported in a police van.  Gorman, 257 F.3d at

-4-

741–45. Because the Kansas City Board is created by the same set of Missouri statutes and is governed by Missouri statutes in a way that, for purposes of determining its status as a state agency vel non, is indistinguishable from the way in which the St. Louis Board is governed, we looked to two decisions involving the St. Louis Board for guidance in our analysis. First, we considered the Auer Court's holding that the St. Louis Board was not shielded by Eleventh Amendment immunity and noted that the "structure [of the Kansas City Board] mirrors that which the Supreme Court found in Auer to not be an arm of the state." Id. at 744–45. Second, we considered the holding of the Missouri Court of Appeals in Smith v. State, No. W.D. 58882, 2001 WL 471937 (Mo. Ct. App. May 7, 2001), that the state had no obligation to pay judgments rendered against the St. Louis Board or its employees because the St. Louis Board was not a state agency for purposes of the SLEF.[5] In light of these cases, we concluded that the Kansas City Board was not an arm of the state immune from suit. Gorman, 257 F.3d at 745; see also Darby v. Bratch, 287 F.3d 673, 679 (8th Cir. 2002) ("Because our decision in Gorman is controlling on this issue, the District Court's determination that the Kansas City Board of Police Commissioners was entitled to Eleventh Amendment immunity must be reversed.").[6]

Recent developments in Missouri law appear to have eroded the Eleventh Amendment analyses in Auer and Gorman. First, as indicated in the magistrate judge's opinion, the Missouri Supreme Court reversed the Missouri Court of Appeals's decision in Smith and determined that the St. Louis Board is an agency of the state covered by the SLEF. See Smith, 152 S.W.3d at 278. Then, in express response to

---

[5]This decision of the Missouri Court of Appeals was appealed to the Missouri Supreme Court, which dismissed the appeal as premature. Smith v. State, 63 S.W.3d 218 (Mo. 2001) (en banc). The Missouri Supreme Court eventually decided the merits of the case in Smith v. State, 152 S.W.3d 275 (Mo. 2005) (en banc), the opinion on which the magistrate judge in this case relied.

[6]To our surprise and dismay, neither the parties nor the magistrate judge cited Auer, Gorman, or Darby.

the Missouri Supreme Court's decision, the Missouri General Assembly passed a law limiting the state's obligations under the SLEF to the boards of police commissioners. See Mo. Rev. Stat. § 105.726 (Supp. 2005). The new law provides that SLEF money "shall not be available for the payment of any claim or any amount required by any final judgment . . . against a board of police commissioners" except to reimburse the boards of police commissioners for claims "paid by such boards on an equal share basis per claim up to a maximum of one million dollars per fiscal year." Id. § 105.726.3.[7]

These changes in Missouri's legal landscape, along with state statutes defining the character of the St. Louis Board, suggest that the St. Louis Board may be an arm of the state entitled to Eleventh Amendment immunity.[8] The contrary holding in

---

[7]Likewise, new § 105.726.4 provides that, while the state attorney general must represent the boards of police commissioners if so requested, "[t]he attorney general and the officials of the city which the police board represents shall meet and negotiate reasonable expenses or charges that will fairly compensate the attorney general and the office of administration for the cost of representation." Mo. Rev. Stat. § 105.726.4 (Supp. 2005).

[8]A number of factors suggest that the St. Louis Board is an arm of the state of Missouri entitled to Eleventh Amendment immunity. The St. Louis Board, along with the Kansas City Board, was established pursuant to legislation that was a direct state response to perceived problems of political corruption of the police forces in St. Louis and Kansas City. Under current state law, state treasury money will be used to pay at least a portion of legal judgments entered against the board. Mo. Rev. Stat. § 105.726.3 (Supp. 2005). Also significant is the considerable control that the state exercises over the board. Four of the board's five members are appointed by the governor of Missouri with the advice and consent of the Missouri Senate. Id. § 84.030 (2000). The governor also has the power to remove any commissioner that the governor deems "guilty of official misconduct." Id. § 84.080. The state delineates the qualifications of commissioners and also determines the commissioners' salaries. Id. § 84.040. The duties and powers of the board are set by state statute, id. § 84.090, and the city of St. Louis is specifically prohibited from passing ordinances interfering with these powers, id. § 84.010. The administration of the St. Louis police force is also

-6-

Auer, however, is directly on point and is binding. While Smith and the ensuing Missouri legislation may have undermined the status of Auer, the question is not free from doubt, and in any event it is for the Supreme Court, not this Court, to overrule Supreme Court precedent. The Supreme Court has clearly advised, "If a precedent of this Court has direct application in a case . . . the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Rodriguez De Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989); see also Hutto v. Davis, 454 U.S. 370, 375 (1982) (per curiam) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."); Roper v. Simmons, 543 U.S. 551, 594 (2005) (O'Connor, J., dissenting) ("[I]t remains 'this Court's prerogative alone to overrule one of its precedents.' . . . That is so even where subsequent decisions or factual developments may appear to have 'significantly undermined' the rationale for our earlier holding." (citations omitted)).

Because Auer controls our decision in this case, we necessarily conclude that the St. Louis Board is not protected by Eleventh Amendment immunity.[9] The judgment of the District Court is reversed and the case is remanded for further proceedings.

_____

largely in the hands of the state. State statutes set the size of the police force, id. § 84.100; qualifications of police officers, id. § 84.120; length of police officer shifts, id. § 84.110; vacation time earned by police officers, id. § 84.140 (Supp. 2005); the maximum amount of police officer salary, id. § 84.160; and insurance benefits that the board must provide police officers, id.

[9]We note that the Supreme Court may wish to revisit the matter in the wake of the post-Auer developments in Missouri law. See Regents, 519 U.S. at 429 n.5 (noting that the "federal question [of whether an agency is an arm of the state] can be answered only after considering the provisions of state law that define the agency's character.").